NOT FOR PUBLICATION                                              (Doc. Nos. 29, 31, 34)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                :
PATRICK ELLIOT,                                 :
                                                :
            Plaintiff,                          :    Civil No. 12-7440 (RBK/JS)
                                                :
        v.                                      :    **OPINION**
                                                :
GLOUCESTER CITY, DETECTIVE                      :
CARL DEPODER, and LIEUTENANT                    :
BRIAN MORRELL,                                  :
                                                :
            Defendants.                         :
_____             :

**KUGLER**, United States District Judge:

This matter comes before the Court on the motions of Detective Carl Depoder, Lieutenant Brian Morrell, and Gloucester City (collectively "Defendants") to dismiss Count IV of the Complaint of Patrick Elliot ("Plaintiff"), and for summary judgment pursuant to Federal Rule of Civil Procedure 56, and on the separate motion of Gloucester City for summary judgment on the municipal liability claims asserted against it.  For the reasons stated herein, Defendants' motion for partial dismissal will be **GRANTED**, Defendants' motion for summary judgment will be **GRANTED IN PART, DENIED IN PART**, and Gloucester City's motion for summary judgment will be **DENIED.**

I.     BACKGROUND

On May 2, 2012, Detective Depoder and Lieutenant Morrell, both members of the Gloucester City Police Department, were dispatched to Plaintiff's residence to investigate a reported sexual assault.  Defendants' Statement of Undisputed Material Facts ("SUMF") ¶ 3.  As

of May 2, 2012, Plaintiff resided with Cheryl Robinson and her niece, Stephanie Porch.  Ms. Porch was the alleged victim of the sexual assault.  Plaintiff's friend Emory Coleman, who was the subject of the police investigation, occasionally stayed "on the couch" at Plaintiff's residence.  Pl.'s Supp. SUMF ¶ 12.  The officers arrived at Plaintiff's home at approximately 8:00 P.M. and told Plaintiff that they wanted to speak to Mr. Coleman.  Because Mr. Coleman was not present at the time, the officers left.

After the officers left, Plaintiff collected Ms. Porch's belongings and placed them all outside of the house, on the sidewalk.  He indicated that he did this because he believed her allegations of sexual assault to be false and did not want her to remain in his home any longer.  Pl.'s Supp. SUMF ¶ 15.  Later that evening, the officers returned to Plaintiff's home.  SUMF ¶ 4.  They again sought to locate Mr. Coleman, and also wanted to retrieve a piece of clothing from the alleged victim's room.  Id.  When they arrived, they found Ms. Porch's belongings on the sidewalk outside of the house.  Id. ¶ 5.  At this time, the officers instructed Plaintiff to pick up Ms. Porch's belongings and return them inside the house.  Plaintiff refused to do so, and was told that he would be arrested if he did not move the items back into the house.  Id. ¶ 7.[1]  Around this time, Plaintiff stated "Gloucester cops are fucking dicks."  Id.  Shortly after Plaintiff uttered that comment, the officers informed Plaintiff that he was being placed under arrest, and Lieutenant Morrell attempted to lift Plaintiff up from the couch he was sitting on in order to handcuff him.

---

[1] Lieutenant Morrell testified at his deposition that he and Detective Depoder were there to retrieve a pair of underwear belonging to the alleged victim.  Morrell Dep. 51:11-13, Pl.'s Opp'n Ex. J (ECF No. 35-12).  He indicated that the officers ordered Plaintiff to carry Ms. Porch's personal effects inside so they could look through the items in a well-lit area, instead of outside in the dark, in an effort to locate the underwear.  Id. at 52:25-53:23.  Morrell also indicated that he directed Plaintiff to bring the items inside because he did not believe that Plaintiff could legally "evict" Ms. Porch in such a manner.  Id. at 56:1-12.

2

Morrell Dep. 65:9-17, Def.'s Mot. Summ. J. Ex. J.² At this point, a physical altercation broke out between Plaintiff and the police officers. The officers indicate that as they approached the couch that Plaintiff was sitting on, he pushed one of the officers in the chest. Plaintiff admits to pushing an officer in the chest, but indicates that this contact took place after an officer pulled him up from his couch, in order to "push off" the officer, because, according to Plaintiff, "if I didn't put my hands up and steady myself, I would have basically kissed him." Elliot Dep. 45:15-19, 51:20-52:15, Def.'s Mot. Summ. J. Ex. B. The officers then attempted to subdue Plaintiff, and it is undisputed that he was punched by the officers as they pushed him against a door and restrained him. Plaintiff sustained contusions to his face, the loss of one tooth, and the loosening of another tooth as a result of the altercation with the police officers. Pl.'s Supp. SUMF ¶ 10.

Plaintiff was arrested, and charged with resisting arrest and obstructing an investigation. SUMF ¶ 9. He was transferred to the Camden County Jail, where he remained for forty-two days until his case was heard in New Jersey Superior Court. Id. ¶¶ 11-12. He pled guilty to resisting arrest, and was convicted of resisting arrest in the third-degree. Id. ¶¶ 14-15. The other charges were dismissed as a result of his plea. Id. ¶ 15. As part of his plea colloquy, Plaintiff admitted to placing his hand on an officer's chest and pushing the officer, refusing to be

---

² The defendants in this matter filed two separate motions for summary judgment. On February 11, 2014, Gloucester City, Lieutenant Morrell, and Detective Depoder filed a motion for summary judgment on all of Plaintiff's claims except for his Monell claim, which is discussed in section III.D of this Opinion. See ECF No. 31. Then, on February 26, 2014, Gloucester City filed a motion for summary judgment on the Monell claim. See ECF No. 34. For purposes of citation in this Opinion, where the Court refers to "Defendants" or uses the abbreviation "Def.'s," the Court refers to the joint motion of February 11, 2014. The Court will refer specifically to Gloucester City's motion when it refers to the materials submitted with the motion on the Monell claim. Further, since Plaintiff filed separate opposition briefs, the Court will designate them by ECF number when referring to Plaintiff's briefs.

handcuffed, and that he had created a risk of physical injury by his actions.  Id. ¶¶ 18-20.[3]  Plaintiff was sentenced to two years of probation and 120 days in county jail, with credit for the forty-two days he had already spent in county jail.  Id. ¶ 15.

Plaintiff subsequently filed suit under 42 U.S.C. § 1983, alleging violations of his constitutional rights by Detective Depoder and Lieutenant Morrell.  He alleges that the officers used excessive force when arresting him, and also claims that the officers had no probable cause for which to place him under the arrest which he resisted, because he had not committed any crime by moving Ms. Porch's belongings onto the sidewalk, or by refusing the officers' demands that he bring them back inside.  He also named Gloucester City as a defendant, alleging that the city's official custom of failing to properly train and discipline officers for instances of excessive force led to his injuries.  The officers and Gloucester City have filed separate motions for summary judgment on all claims.  All defendants have also moved to dismiss Count IV of the Complaint.

## II.    LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

---

[3] The Court deems these statements as undisputed, although Plaintiff responds with "Denied as stated."  Plaintiff's legal citations in his response to the Statement of Undisputed Material Facts are in violation of Local Civil Rule 56.1.  Further, the plea transcript supports this description of the plea colloquy as cited by Defendants.  See Def.'s Mot. Summ. J. Ex. G, at 9-10.

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact.  Anderson, 477 U.S. at 248.  Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor.  Id. at 255; Matsushita, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment.  Anderson, 477 U.S. at 256.  The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor.  Id. at 257.  The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

### A. Heck Doctrine

Detective Depoder and Lieutenant Morrell first argue that summary judgment should be granted on all of Plaintiff's § 1983 claims because Plaintiff ultimately pled guilty to the charge of resisting arrest.  The doctrine articulated by the Supreme Court in Heck v. Humphrey, 512 U.S. 477 (1994), proscribes a § 1983 plaintiff's right to recover for certain causes of action if the plaintiff has been criminally convicted of charges directly related to the § 1983 claim.  Id. at 486.

Heck dealt with a plaintiff's ability to recover damages for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." Id.  In such a case, a plaintiff must show that the conviction or sentence has been overturned on appeal, or otherwise declared invalid or called into question. Id. at 486-87.  Thus, if a plaintiff cannot make such a showing in a § 1983 suit, the district court must determine whether "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Id. at 487.

The Third Circuit subsequently applied Heck in a case where a plaintiff who had been convicted of resisting arrest filed a § 1983 suit alleging excessive use of force against the arresting officer. Nelson v. Jashurek, 109 F.3d 142, 145-47 (3d Cir. 1997).  In Nelson, the plaintiff had been wanted for alleged violations of the conditions of his parole. Id. at 143-44.  He disobeyed the orders of a police officer to halt and fled on foot. Id. at 144.  When the plaintiff was caught and subdued by the police officer, he claimed that the officer used excessive force to subdue him and beat him with a flashlight after he had already been subdued. Id.  The Third Circuit found that judgment for the plaintiff on his excessive force claim would not imply that the arrest was unlawful or otherwise invalidate the arrest or conviction, and therefore, the excessive force claim was not barred by Heck. Id. at 145.  The Third Circuit did, however, find that Heck would preclude a verdict in the civil case based upon "a finding by the jury [that] the [the police officer] was not entitled to use substantial force to arrest Nelson," because such a finding would be inconsistent with the criminal conviction. Id. at 146.  Thus, on remand, the Third Circuit instructed the district court to either instruct the jury that Nelson was convicted of

resisting arrest, or that the police officer was justified in using substantial force, and that he would only be liable for using force in excess of that which he was privileged to use. Id.

Here, counts Two and Three of the Complaint allege § 1983 violations against Detective Depoder and Lieutenant Morrell, respectively. Both counts allege false arrest and excessive use of force during arrest.

First, the Court finds that Heck and its progeny do not bar the excessive force claims. Under the Heck doctrine as it is applied in the Third Circuit, excessive force claims are not automatically barred as a matter of law by a related conviction for resisting arrest. Rather, a law enforcement officer may use substantial force, which the jury must be informed of at trial, but may be held liable for using force in excess of that which he is privileged to use. Nelson, 109 F.3d at 146. Here, viewing the facts in the light most favorable to the Plaintiff, there is evidence that Plaintiff was struck in the face with enough force to knock out at least one tooth. Elliot Dep. 46:7-12, Def.'s Mot. Summ. J. Ex B. Plaintiff testified that Lieutenant Morrell subdued him by holding his hands behind his back, and that once he was already subdued in this manner, Detective Depoder threw several additional punches with his right hand. Id. at 47:16-50:7. A witness also testified that Plaintiff was punched "five to six times" after the officers already had Plaintiff's arms behind his back and he was bleeding. Robinson Dep. 19:13-20:6, Pl.'s Opp'n Ex. B. Clearly, if this evidence were to be believed by a jury, it could find that such force was in excess of the substantial force that the officers were entitled to use to subdue Plaintiff, because he was already subdued once his arms were held behind his back. Such a finding would in no way be inconsistent with Plaintiff's criminal conviction for resisting arrest.

The Court also finds that Plaintiff's false arrest claim is not barred by his guilty plea. Defendants argue that since Plaintiff pled guilty to resisting a "lawful arrest," he is barred by Heck from bringing a § 1983 claim for false arrest against the Defendants. See Defs.' Mot. Summ. J. at 4.  Plaintiff pled guilty to violating N.J.S.A. 2C:29-2, which states that "a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest." N.J.S.A. 2C:29-2(a)(1).  New Jersey law does not require that the arrest be "lawful."  See Platt v. Gonzalez, Civ. No. 09–6136, 2011 WL 2413264, at *3 (D.N.J. June 9, 2011) (internal citations omitted) (indicating that "[t]he 2000 amendment of this section deleted the word 'lawful' before the word 'arrest' in order to 'omit[ ] the condition that the arrest be lawful and include[ ] attempts to prevent a law enforcement officer from effecting an arrest.'").  Thus, the lawfulness or unlawfulness of an underlying arrest is immaterial to a charge of resisting arrest, and is not an element of the crime.  It follows that Plaintiff's false arrest claim is not barred under Heck, "because success on . . . [that] . . . claim would not imply the invalidity of Plaintiff's criminal conviction" for resisting arrest.  Id.  Similar to Platt, "[t]he offense to which Plaintiff pled guilty to does not require a lawful arrest."  Id.; see also Murdock v. Borough of Edgewater, Civ. No. 08–2268, 2011 WL 5320995, at *10 (D.N.J. Nov. 2, 2011) ("relying on . . . Platt, this Court finds that plaintiff's recovery, if any, on his section 1983 unlawful arrest claim would not 'necessarily imply' his state court conviction for resisting arrest [was invalid] because that conviction did not require a finding of lawful arrest"). Thus, Defendants are not entitled to judgment as a matter of law on the false arrest claim.

Defendants also seek summary judgment on Plaintiff's claims that he should be entitled to recover his lost wages for the forty-two days he spent incarcerated as a result of his guilty plea

8

to charges of resisting arrest, and that this time of incarceration constituted false imprisonment. Plaintiff claims that if the original arrest was unlawful, liability should attach for the time he spent in the county jail. However, as Plaintiff admits in another part of his brief, "New Jersey case law make[s] it clear that one may be guilty of resisting arrest even where such arrest is illegal." Pl.'s Opp'n at 10 (ECF No. 35).[4] Thus, by Plaintiff's own admission, he was properly found guilty of resisting arrest regardless of whether the underlying attempt to arrest him was lawful. The forty-two days was clearly part of Plaintiff's sentence for resisting arrest, and thus is unrelated to whether Plaintiff could have been arrested for any other reason. See Judgment of Conviction & Order for Commitment, Def.'s Mot. Summ. J. Ex. F. Subjecting Defendants to liability for the time he spent serving his sentence for resisting arrest would implicate Heck, in that it would call into question the guilty verdict. 512 U.S. at 487. Plaintiff was not legally permitted to resist the arrest, even if the officers did not have valid grounds to arrest him. As Plaintiff acknowledges, resisting arrest, which Plaintiff admitted to, is criminally punishable even under such circumstances. Thus, summary judgment will be granted on this claim. Because his lost wage claim also relates to the same period of incarceration, summary judgment will be granted on that claim.[5]

---

[4] Plaintiff did not include page numbers in his opposition brief. Thus, the court refers to the first page of the document as it appears in the electronic file on the docket as page one, with the remaining pages numbered in sequence.

[5] Plaintiff also withdraws his claim for future lost wages, and thus summary judgment will be granted on that claim. See Pl.'s Opp'n at 4 n.1 (ECF No. 35).

**B. Probable Cause to Arrest**

Defendants argue that even if the Plaintiff's false arrest claim is not barred by Heck, "[t]here are plenty of facts in this case to establish probable cause for the arrest of the plaintiff at the time of his arrest." Defs.' Reply Br. 7-8. The Court thus examines the facts that could have potentially established probable cause to arrest prior to Plaintiff's act of resisting arrest.

Whether an arrest is constitutionally valid depends "upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that an offense was being or had been committed. Beck v. State of Ohio, 379 U.S. 89, 91 (1964). "Probable cause is a sufficiently fact-laden issue as to typically be a question for the jury." Stolinski v. Pennypacker, 772 F. Supp. 2d 626, 638 (D.N.J. 2011) (internal citation omitted). However, in a § 1983 case, a "district court may conclude in the appropriate case . . . that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997) (internal citations omitted). In this case, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that probable cause to arrest was lacking with respect to all of the laws that Defendants argue the officers could have reasonably believed were violated by Plaintiff.

First, Defendants argue that Plaintiff violated New Jersey's Anti-Eviction Law by removing Ms. Porch's possessions from his home without following the approved procedure for eviction of a tenant under New Jersey law. See Defs.' Reply Br. 8. However, not only do the

Defendants fail to cite case law to support their assertion, but it is undisputed that Ms. Porch was not paying rent to Plaintiff. Pl.'s Supp. SUMF ¶¶ 13-14. Only tenants listed on a formal lease or "functional co-tenants" are entitled to the protections afforded by the Anti-Eviction Act. See Meadows Found., Inc. v. Williamson, 368 N.J. Super. 416, 421 (App. Div. 2004) ("[t]he Anti-Eviction Act's applicability is limited to leases whose purpose is fundamentally and primarily residential in nature").[6] The evidence indicates that Ms. Porch did not reside at Plaintiff's home pursuant to any lease. Elliot Dep. 44:4-7, Def.'s Mot. Summ. J. Ex. B. Neither did she contribute financially in exchange for living accommodations. Id. at 37:13-22. There is no indication that Plaintiff violated New Jersey's Anti-Eviction Law by removing Ms. Porch's belongings from his home without notice, and therefore Defendants cannot assert that this act established probable cause to arrest him.

Further, Defendants have not established that a violation of the Anti-Eviction Law would ever give rise to probable cause to effectuate an arrest. The Anti-Eviction Law provides for civil penalties against a landlord who violates it, and indicates that jurisdiction over such proceedings exists in the Superior Court, Law Division, Special Civil Part. N.J.S.A. 2A:18-61.1e. Defendants have pointed to no law, nor is the court aware of any law that makes it a criminal offense to violate the Anti-Eviction law. See Weise v. Dover General Hosp. & Med. Ctr., 257 N.J. Super. 499, 503 n.2 (App. Div. 1992) (indicating that a violator of the Anti-Eviction Law is

---

[6] A functional co-tenant means:
> one who can show that she has been continuously in residence; that she has been a substantial contributor toward satisfaction of the tenancy's financial obligations; and that her contribution has been acknowledged and acquiesced to by her landlord – is entitled to invoke the protections of the Anti-Eviction Act.

Maglies v. Estate of Guy, 193 N.J. 108, 126 (2007). Based upon the facts in the record, Ms. Porch would not qualify as a functional co-tenant.

subject to civil penalties of "not less than $2,500 or more than $10,000 for each offense, and . . . treble damages, plus attorney fees and costs of suit, for any loss or expenses incurred by a former tenant . . . ."). While Lieutenant Morrell did testify that he was justified in instructing Plaintiff to bring the property back inside the house because "[t]hey didn't evict her properly," it appears that neither officer testified that Plaintiff was arrested for allegedly violating the Anti-Eviction Law. Morrell Dep. 56:1-12, Pl.'s Opp'n Ex. J (ECF No. 35-12). Rather, Defendants' reference to law governing landlord-tenant relations is more likely a <u>ex-post</u> attempt to provide justification for the arrest.

Second, Defendants argue that Plaintiff's refusal to bring Ms. Porch's possessions back inside the house "could have been interpreted [by the officers] as tampering with evidence or interfering with an investigation," such that the officers might have believed they had probable cause to arrest the Plaintiff. Defs.' Reply Br. 8-9. The Court finds that there is insufficient evidence at this stage to conclude that the Officers had probable cause as a matter of law with respect to these charges.

The offense of tampering with physical evidence requires that an individual "believing that an official proceeding or investigation is pending or about to be instituted . . . [a]lters, destroys, conceals or removes any article, object, record, document or other thing of physical substance with purpose to impair its verity or availability in such proceeding or investigation." N.J.S.A. 2C:28-6(1). Plaintiff alleges that he moved Ms. Porch's belongings out of his home and onto the sidewalk because he was upset that she had accused Emory Coleman of sexually assaulting her. Elliot Dep. 34:18-35:25, Def.'s Mot. Summ. J. Ex B. Thus, there is insufficient evidence to declare as a matter of law that Plaintiff moved Ms. Porch's belongings out of his

12

home with the purpose of impairing their "verity or availability" in a "proceeding or investigation" as required by the statute. Further, Defendants have not suggested that Plaintiff knew that any potential evidence might have been contained in Ms. Porch's belongings until <u>after</u> he moved the items onto the sidewalk. In fact, Lieutenant Morrell admitted that Plaintiff did not commit a crime by merely placing Ms. Porch's belongings on the sidewalk. Morrell Dep. 46:22-48:4, 57:3-18, Pl.'s Opp'n Ex. J (ECF No. 35-12). Rather, Morrell believed that Plaintiff committed a crime by refusing to move the items back inside. <u>Id.</u> 58:14-23.

      The offense of "obstructing administration of law or other governmental function" occurs when the accused "purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." N.J.S.A. 2C:29-1(a). Defendants point to nothing indicating that Plaintiff acted with the requisite intent to interfere with an investigation, or even that he knew that any of Ms. Porch's belongings might have constituted evidence. Nor do they point to anything suggesting that the officers would have any such reasonable belief. Neither would Plaintiff's refusal to bring the items back into his home constitute "flight, intimidation, force, violence, or physical interference or obstacle." Lieutenant Morrell admitted that he and Detective Depoder looked at the items outside at first, using flashlights, and Plaintiff did not attempt to prevent them from doing so. Morrell Dep. 51:14-54:6, Pl.'s Opp'n Ex. J (ECF No. 35-12). While ideally, citizens will cooperate with law enforcement investigations into alleged crimes, Defendants have pointed to no law requiring Plaintiff to actively assist the police in their investigation. The Court finds insufficient evidence

13

here to find as a matter of law that the officers reasonably believed that Plaintiff had violated either N.J.S.A. 2C:28-6(1) or N.J.S.A. 2C:29-1(a).

Finally, Plaintiff has produced evidence that could lead a reasonable jury to believe that it was Plaintiff's derogatory comment about Gloucester City police officers that prompted his arrest, and not any reasonable belief that he had obstructed justice or committed any other crime. See Allison Dep. 32:20-33:7, Pl.'s Opp'n Ex. D (testimony of a witness that Plaintiff "said, [y]eah, Gloucester cops are dicks, you know, to me.  And . . . that's when I heard one of them say, That's it. Get up. . . . You're under arrest."). Thus, summary judgment will be denied as to Plaintiff's false arrest claim.

### C. Qualified Immunity

Defendants also argue that summary judgment should be granted because Detective Depoder and Lieutenant Morrell are entitled to qualified immunity. Government officials performing discretionary functions are entitled to immunity from civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights" which a reasonable government official would have known of. Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Thus, if a police officer "reasonably but mistakenly" concludes that his conduct is in compliance with the constitution, he will be immune from a § 1983 claim. Id. at 826.

Detective Depoder and Lieutenant Morrell take the position that even if they acted mistakenly, they acted reasonably in attempting to subdue Plaintiff. They argue that they were in an unfamiliar location, and were outnumbered by Plaintiff and others who were present in his home at the time. When Plaintiff was told he was being arrested, he pushed one of the officers

on the chest and refused to be handcuffed.  According to the officers, one punch was thrown to subdue Plaintiff.  While this version of the facts would likely result in a finding of qualified immunity, because an officer could reasonably believe that one punch was necessary to subdue a person placed under arrest who had pushed a police officer, the Court must accept Plaintiff's version of the facts at this stage.

      As the Court set forth in the previous section, Plaintiff indicates that after he placed his hands on an officer's chest, the officers picked him up, threw him against a door, and struck him in the face five to six times.  He also indicates that several of these punches were thrown after one of the officers held Plaintiff's arms behind his back.  Such a display of force, resulting in sufficient trauma to extract a tooth, would be a violation of clearly established rights.  See Thomas v. Atty. Gen. of N.J., 692 F. Supp. 2d 444, 447, 452 (D.N.J. 2010) (finding that where a plaintiff alleged that he was punched in the mouth when he had his hands up and then beaten after he was handcuffed, summary judgment on qualified immunity grounds was inappropriate); Giles v. Kearney, 571 F.3d 318, 326-27 (3d Cir. 2009) (summary judgment held to be improper where a dispute of material fact existed as to whether an inmate had ceased resisting when he was kicked in the side with enough force to cause a broken rib and collapsed lung).  When a genuine dispute of material facts exists as to what took place in an altercation between police officers and an arrestee, and one version describes a violation of clearly established rights, as here, summary judgment should be denied on a qualified immunity claim.  Nelson, 109 F.3d at 147 (internal citations omitted).

      **D. Monell Claims**

A municipality is not vicariously liable for the actions of its law enforcement officers. Monell v Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). In order to make out a § 1983 claim against a municipality, it must be shown to be responsible for its own unlawful acts. Id. at 692. To do so, a plaintiff must show either that (1) the alleged action "implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers," or that (2) constitutional deprivations took place "pursuant to governmental 'custom' even though such a custom has not received formal approval" from official municipal decision-makers. Id. at 690-91. The former theory is often referred to as a "policy," while the latter is referred to as a "custom." It is the "official custom" theory that Plaintiff alleges here. Liability based upon a custom is rooted in the theory that the "relevant practice is so widespread as to have the force of law." Board of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (citing Monell, 436 U.S. at 690-91).

Custom may be shown by "proof of knowledge and acquiescence." Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir. 1989) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481 n.10 (1986)). When a violation of constitutional rights is a "highly predictable consequence" of a municipal custom, so that it is likely to recur, a municipality may be held liable based on a single instance of the custom. Monaco v. City of Camden, Civ. No. 04-2406, 2008 WL 8738213, at *7 (D.N.J. Apr. 14, 2008) (citing Bryan Cnty., 520 U.S. at 409-10).

Here, Plaintiff points to the internal affairs investigation performed as a result of this incident as evidence of custom. Because Lieutenant Morrell is the nephew of the wife of the Chief of Police of Gloucester City, the investigation was performed by the Camden County

16

Prosecutor's Office.  Berglund Dep. 11:16-23, Gloucester City Mot. Summ. J. Ex F.[7]  The Assistant Prosecutor who investigated concluded that the officers' use of force was unnecessary, although the investigation did not disclose sufficient evidence to prove criminal conduct on the part of either officer.  Pl.'s Opp'n Ex. F (ECF No. 35-8).  It found that "[y]our officers had no reasonable basis to believe that such force was immediately necessary," and that the proper remedy was "re-training and/or discipline."  Id.   The investigation also reviewed prior excessive force complaints involving Lieutenant Morrell and Detective Depoder.  After reviewing five prior complaints alleging excessive force against Lieutenant Morrell, and three against Detective Depoder, the investigator found that "we are compelled to highlight for you a troubling pattern of conduct that we believe necessitates some redress by your department."  Id. at 1-2.

Further, Plaintiff points to the testimony of both officers that neither ever received discipline in connection with excessive force, nor had either received training in addition to routine bi-annual training on use of force.  Specifically, Plaintiff points to another alleged incident of excessive force that occurred on January 19, 2011, involving the same two officers.  In that instance, a complainant alleged that Lieutenant Morrell punched him multiple times in the face in the police headquarters building after Lieutenant Morrell and Detective Depoder had effected an arrest.  Similarly, the Camden County Prosecutor's office found pursuant to a January 4, 2013 letter that Lieutenant Morrell's use of force on that occasion was unnecessary.  Pl.'s Opp'n Ex. F (ECF No. 41-9).[8]

---

[7] Evidently, Lieutenant Morrell is also involved with internal investigations at the Gloucester City Police Department.  Eller Dep. 11:19-12:2, Gloucester City Mot. Summ. J. Ex. H.  It is unclear whether this is an additional reason the internal investigation was performed by the Camden County Prosecutor's office.

[8] The date of the letter was subsequent to the date of the alleged use of excessive force involved in the instant case.  Thus, the Court does not suggest that Gloucester City was on notice of the final conclusions about the prior incident before the underlying events took place.

17

Where the chief law-enforcement policymaker in a municipality allegedly knew of a custom that tolerated excessive use of force by police officers, summary judgment should be denied. Beck v. City of Pittsburgh, 89 F.3d 966, 976 (3d Cir. 1996). The Court finds that this is such a case. Plaintiff has demonstrated that a number of excessive force complaints have been filed against both Lieutenant Morrell and Detective Depoder. Defendants point out that these officers arrest suspects on a daily basis, and thus such complaints may not represent a large percentage of total arrests. Although this is a proper argument as to the weight of the evidence, a reasonable jury could find, as the Camden County Prosecutor's office did, that a "pattern of conduct" exists that amounts to a custom within Gloucester City's police force. As in Beck, there is also evidence in this case that the disciplinary system in Gloucester City is set up to curtail disciplinary action. Neither of the arresting officers were ever disciplined in connection with any of the eight prior complaints of excessive force, and a police official testified that he has never concluded that any of the thirty officers in the department has ever used excessive force. Eller Dep. 64:16-20, Gloucester City Mot. Summ. J Ex. H. While the department in question is not a large one, combined with the findings by the lead investigator that lack of training was the cause of this incident, a jury could reasonably conclude that the department's internal investigation process does not "have some teeth." Beck, 89 F.3d at 974. Thus, Plaintiff will survive summary judgment based on an alleged municipal custom.

### E. Count IV (John Doe Defendants)

Defendants have filed a separate motion, asking the Court to dismiss Count IV of Plaintiff's Complaint, which alleges false arrest and excessive force claims against unnamed Gloucester City police officers. Defendants argue that under Federal Rule of Civil Procedure

18

4(m), because more than 120 days have passed since the filing of the complaint, and Plaintiff has not amended his pleading to identify any of these officers, this Count should be dismissed.

Although it is not clear that the named defendants have standing to ask for the dismissal of claims against fictitious "John Doe" defendants, Plaintiff has not opposed this motion, although he opposed both summary judgment motions. Thus, the Court assumes that he consents to the dismissal of Count IV. Further, Federal Rule of Civil Procedure 21 "has been used by the courts to dismiss claims against John Doe defendants, as appropriate." Marulli v. Alloy, Civ. No. 04-2874, 2006 WL 2772553, at *7 (D.N.J. Sept. 23, 2006) (citing Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 754 (D.N.J. 2002)). It seems appropriate to do so here, given than Plaintiff has not opposed the motion, and that it is Plaintiff's responsibility to amend his complaint to state a defendant's true name. See Knight v. Brown Transp. Corp., 806 F.2d 479, 486-87 n.4 (3d Cir. 2006). Since Plaintiff has not done so in the more than eighteen months since he filed his Complaint, the Court will dismiss Count IV pursuant to Rule 21.

**IV. CONCLUSION**

For the reasons expressed above, Defendants' joint motion for summary judgment will be **GRANTED IN PART, DENIED IN PART**. Summary judgment will be granted on Plaintiff's false imprisonment claim and his claim for lost wages, and denied as to the remainder of his claims. Gloucester City's motion for summary judgment will be **DENIED**, and the motion to dismiss Count IV of the Complaint will be **GRANTED**. An appropriate Order shall enter.

Dated:  7/11/2014                                                                                       s/ Robert B. Kugler

                                                             ROBERT B. KUGLER  
                                                             United States District Judge